IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:23-cv-02674-SKC

C.A.P.,

 Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

 Defendant.

---

OPINION & ORDER

---

  This action arises from Plaintiff C.A.P.'s[1] application for child's insurance benefits under 42 U.S.C. § 423(d), alleging disability beginning May 4, 2017, and for review of the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying Plaintiff's application.[2] The Court has carefully considered the parties' briefs, the social security administrative record, and applicable law. No hearing is necessary. Because substantial evidence in the record does not support the restriction in the residual functional capacity findings that allow Plaintiff to

---

[1] This Opinion & Order identifies Plaintiff by initials only per D.C.COLO.LAPR 5.2.

[2] To be entitled to child's insurance benefits, Plaintiff must have been at least 18 years old and with a disability that began before she attained the age of 22. 42 U.S.C. § 402(d); 20 C.F.R. § 404.350(a)(5).

1

"frequently reach, handle, finger, and feel bilaterally," the Court reverses the Final Decision and REMANDS for additional proceedings.

## BACKGROUND

Plaintiff claims she became disabled beginning May 4, 2017, one day before she turned 22 years old. Plaintiff appeared at a telephonic administrative law hearing on January 29, 2023, before Administrative Law Judge Jeffrey N. Holappa (ALJ). Attorney Thomas Hill represented her at the hearing. The ALJ issued his written Decision on February 1, 2023. Dkt. 11-2; AR: 17-36.[3] He determined Plaintiff had not been under a disability prior to May 4, 2017. Plaintiff then requested review by the Appeals Council, which denied her request, and in doing so, the ALJ's Decision became the Final Decision of the Commissioner of Social Security. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff then timely filed this action. The Court has jurisdiction to review the Final Decision under 42 U.S.C. § 405(g).

## DIB FRAMEWORK

A person is disabled within the meaning of the Social Security Act "only if [her] physical and/or mental impairments preclude [her] from performing both [her] previous work and any other 'substantial gainful work which exists in the national

---

[3] The Court uses "Dkt. __" to refer to specific docket entries in CM/ECF and uses "AR: __" to refer to documents in the administrative record. The administrative record may be found at Dkt. 11.

2

economy.'" *Wilson v. Astrue*, No. 10-CV-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (citing 42 U.S.C. § 423(d)(2)). "The mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Id.* "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Fritz v. Colvin*, 15-cv-00230-JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Social Security Regulations outline a five-step process to determine whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made based on the claimant's age, education, work experience, and residual functional capacity.

*Wilson*, 2011 WL 9234, at *2 (citing 20 C.F.R. § 404.1520(b)–(f)); *see also* 20 C.F.R. § 416.920; *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). Impairments that meet a "listing" under the Commissioner's regulations (20 C.F.R. § Pts. 404 and 416, Subpt. P, App. 1)[4] and a duration requirement are deemed disabling at Step Three with no need to proceed further in the five-step analysis. 20 C.F.R. § 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Between the Third and Fourth steps, the ALJ must assess the claimant's residual functional capacity (RFC). *Id.* § 416.920(e). The claimant has the burden of proof in Steps One through Four. The Commissioner bears the burden of proof at Step Five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

---

[4] Throughout this Opinion, while the Court may cite relevant sections of Part 404 of Title 20 of the Code of Federal Regulations (which contain the Commissioner's regulations relating to disability insurance benefits), identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits. This Opinion & Order refers to both parts interchangeably.

The ALJ's Decision tracks the five-step process. At Step One, he found Plaintiff had not engaged in substantial gainful activity (SGA) from the alleged onset date of May 4, 2017. AR: 19. At Step Two, he found Plaintiff has the following severe, medically determinable impairments: radial styloid tenosynovitis of the right hand; obesity; asthma; development coordination delay; sensory processing disorder; attention deficit disorder/ADHD; generalized anxiety disorder; major depressive disorder; and posttraumatic stress disorder (PTSD). *Id.* at 19. At Step Three, he found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 22. He then found Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except she can lift and carry up to 20 pounds occasionally and 10 pounds frequently; and can sit, stand and/or walk up to 6 hours in an 8-hour workday. The claimant can push/pull as much as she can lift/carry. She can frequently climb ramps and stairs, but never climb ladders or scaffolds. The claimant can frequently reach, handle, finger, and feel bilaterally. She is limited to a moderate noise environment. The claimant should have no concentrated exposure to dust, odors, fumes, or other pulmonary irritants; and should have no exposure to unprotected heights, moving mechanical parts, or operation of a commercial motor vehicle. The claimant can understand, remember, and carry out simple instructions; can make simple work-related decisions; and can deal with occasional changes in a routine work setting. She can maintain concentration, persistence, and pace for at least two-hour intervals over a normal 8-hour workday, 40-hour workweek, with standard breaks. The claimant can tolerate occasional interactions with supervisors, coworkers, and the general public.

*Id.* at 25.

At Step Four, the ALJ determined Plaintiff had no past relevant work. *Id.* at 34. And at Step Five, he found there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform such as folder, cleaner/housekeeping, routing clerk, and marker. *Id.* at 35. Accordingly, the ALJ determined Plaintiff was not under a disability during the relevant period. *Id.* at 36.

## STANDARD OF REVIEW

In reviewing the Commissioner's Final Decision, the Court's

> review is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance.

*Lee v. Berryhill*, 690 F. App'x 589, 590 (10th Cir. 2017) (internal quotations and citations omitted, citing *inter alia Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive.").

A court may not reverse an ALJ just because the court may have reached a different result based on the record. The question instead is whether there is substantial evidence showing the ALJ's decision was justified. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "We review only the sufficiency of the evidence, not its weight . . . . Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views." *Lee*, 690 F. App'x at 591-92. Nevertheless, "[e]vidence is not substantial if it is

6

overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). A reviewing court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

Further, because Plaintiff proceeds in this case without the representation of counsel, the Court liberally construes her filings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the Court does not act as her advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## ANALYSIS

Plaintiff raises numerous issues to claim either or both that the ALJ erred and the Final Decision is not supported by substantial evidence in the record. Dkts. 17 and 20. She also challenges the constitutionality of 20 C.F.R. § 404.1420c under the equal protection clause of the Fifth Amendment.[5] *Id.* The Court finds at least one

---

[5] Plaintiff actually argues that § 404.1520c violates the Equal Protection Clause of the Fourteenth Amendment. The Fourteenth Amendment, however, does not apply to the federal government. *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 n.21 (1987) ("The Fourteenth Amendment applies to actions by a State."). But the Fifth Amendment applies to the federal government, and the Fifth Amendment's Due Process Clause incorporates an equal protection

7

issue raised by Plaintiff warrants reversal and remand. The Court addresses that single issue below and declines to address Plaintiff's additional arguments because they may be impacted further on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of the case on remand.").

1.  **The ALJ Erred in Concluding Discontinuance of Plaintiff's Occupational Therapy (OT) Suggested Her Motor Skill Deficits Were Stable and Minimally Interfering**

Plaintiff cites her "decades-long documented motor/hand challenges and developmental coordination delays." Dkt. 17, p.4. The ALJ noted this too, writing that "[t]he evidence shows the claimant has a history of developmental coordination delay dating back to at least 1999 when an occupational/physical therapy evaluation revealed motor skill deficits[.]" AR: 29. He went on to find: "It was noted she had received several years of occupational therapy services, but it had been discontinued

---

component. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). Courts take an approach to Fifth Amendment equal protection claims that is "precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975). Because a pro se litigant's filings are read more liberally than those drafted by a lawyer, *Haines*, 404 U.S. at 520–21, the Court construes Plaintiff's Fourteenth Amendment equal protection claim as a Fifth Amendment equal protection claim. In any event, the Court need not reach this issue on the merits based on its other reasons for reversal and remand.

because she was no longer eligible. This suggests the claimant's symptoms are stable and minimally interfering." AR: 30.

Plaintiff argues the ALJ erred in concluding her inability to continue OT suggests her symptoms are stable. Dkt. 17, p.9. Throughout her opening brief, Plaintiff variously references weakness or pain she experiences in at least her right hand and related deficits in her fine motor skills. *See, e.g., id.*, at pp.1, 4, 5 ("Plaintiff asserts that the medical record is very detailed regarding her . . . hand coordination/grasp issues that would make full-time employment difficult or impossible to maintain."), 6, 7 ("Demanding hand work that triggers pain, cramps or inability to use her hands for a time is inconsistent[.]"), 8, 9. In her reply brief, she argues:

> [A]s the ALJ noted, she can sign her name. However, he also noted that a 2008 neurological evaluation stated she could not use a pencil. This is consistent with the 1999 occupational evaluation, which showed the very lowest score for the ability to write, mark, or use hands consistently. Frequent use triggers an acutely painful tendonitis flareup and is so limiting the Plaintiff avoids such overuse.

Dkt. 20, p.9. Construing her filings liberally, the Court agrees with Plaintiff that the ALJ erred when concluding Plaintiff's cessation of OT suggests her symptoms are stable. And the trickle-down effect this erroneous conclusion had on the ALJ's RFC findings warrants remand.

In support of his erroneous conclusion, the ALJ relied on a record of a July 3, 2008 medical office visit Plaintiff had with a neurologist. AR: 286-90. The reason for

the visit was "Coordination Abnormality." AR: 286. Concerning Plaintiff's new ineligibility for OT, the neurologist explained:

> Testing through occupational therapy put her in the 1% for fine motor coordination. She received occupation therapy services for 4 years. She previously had speech therapy at (sic) younger age, which was discontinued 5 years ago. Her speech is now felt to be normal. Her occupational therapy was discontinued at the same time as the speech therapy. Occupational therapy was also discontinued *as she no longer qualified for an IEP without speech therapy*.

AR: 286 (emphasis added). Citing this record, the ALJ correctly observed "[i]t was noted she had received several years of occupational therapy services, but it had been discontinued because she was no longer eligible." AR: 29. But he incorrectly concluded: "This suggests the claimant's symptoms are stable and minimally interfering." *Id.* This was error. The record makes plain that Plaintiff's OT was discontinued because her speech therapy ceased. *Id.,* at 286. Therefore, the ALJ's conclusion that the cessation of Plaintiff's OT "suggests [Plaintiff's] symptoms are stable and minimally interfering," is unfounded.[6]

---

[6] The error is not harmless. Errors in this context are harmless when the Court can confidently determine that no reasonable administrative factfinder, following the correct analysis, could have resolved the matter any other way. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005). There was no other way to conclude the reason for the discontinuance of Plaintiff's OT because the reason is plain from the face of the record. AR: 286 ("Occupational therapy was also discontinued as she no longer qualified for an IEP without speech therapy."). As the Court explains, this harmful error tainted the remainder of the ALJ's analysis leading to the issue with his RFC findings.

10

To be sure, other evidence in the record post-July 2008 suggests the opposite—that Plaintiff's symptoms were not stable and were more than minimally interfering. For example, on March 2, 2011, Plaintiff's principal wrote the College Board of Services for Students with Disabilities regarding an accommodation for Plaintiff, describing her "low coordination and imprecise use of keys due to poor finger control problems." AR: 297. The principal added: "Because of the motor coordination disability this student makes numerous, confusing typographical errors. She does not type according to an efficient and proper typing style but uses a pounding style that is imprecise and leads to a large number of spelling and transposition errors." *Id*. Medical records from June and July 2016 indicate Plaintiff continued to experience ongoing pain in her right hand and wrist as part of her diagnosis of radial tenosynovitis (also known as De Quervain's tenosynovitis) of the right hand. AR: 353-65. A July 28, 2016 medical office visit notes that her right De Quervain's tenosynovitis "has failed conservative measures including time, bracing, NSAID's." *Id*. at 356. And although a 2018 medical record indicates her right wrist pain was "progressively resolving" with Plaintiff presenting pain-free that day, it also indicates she reported her wrist pain a 7 out of 10 when there is pain. AR: 604.

Significant is a June 3, 2021 Occupational Therapy Evaluation Report. AR: 776-81. This report shows Plaintiff completed the QNST 3 (Quick Neurological Screening Test), which "quantifies the degree of difficulty a person may have with planning and/or executing motor events." AR: 779. In pertinent part, out of 13

11

separately scored tasks, Plaintiff scored a "moderate discrepancy" with "thumb and finger circle" and scored a "severe discrepancy" with "rapidly reversing repetitive hand movements." *Id.* The "moderate" score indicated "she may exert more energy with tasks that may include writing making each task more tiring." *Id.* The "severe" score was because Plaintiff "demonstrated a floppy rotation with rigid or tense finger position and at an usually slow pace." *Id.* In all, her total score for all 13 tasks was "severe discrepancy." *Id.* And further, Plaintiff cites a November 2021 record from Kim Gangwish, a physiologist with specialty in neuro-acupressure who treated Plaintiff for 12 years, who wrote that Plaintiff experiences "reoccurring neurological weakness in her hand and [ ] other coordination issues." AR: 773.

But the ALJ appears to have given these findings and references short shrift. He instead determined that "[w]hile a June 2021 occupational therapy evaluation suggests ongoing motor delays, as well as sensory processing issues, the evidence of record shows the claimant remains fairly active, with indications she can perform routine activities of daily living on a regular basis, can travel and hike, and exhibits a normal gait."[7] AR: 28. To suggest, however, that Plaintiff's ability to travel, hike, and exhibit a normal gait is suggestive of a lack of limitations in her right upper extremity (tenosynovitis and related coordination) is far-fetched. And her ability to remain fairly active and perform routine activities of daily living on a regular basis, without more, is insufficient when examining the overall record. *Beaber v. Colvin*, No.

---

[7] He also found Gangwish's opinions "minimally persuasive."

12

12-cv-02719-REB, 2014 WL 811593, at *4 (D. Colo. Mar. 3, 2014) ("For one thing, and even if these examples were supported by the record, the ability to engage in limited household and other activities of daily living do not equate to the ability to perform substantial gainful activity on a regular work schedule.").

This error by the ALJ had a trickle-down effect and impacted his RFC findings, discussed next.

## 2. Substantial Evidence In the Record Does Not Support the ALJ's RFC Findings

The ALJ's error in concluding that Plaintiff's cessation of OT in 2008 suggested her symptoms were "stable and minimally interfering" negatively impacted his RFC findings. This is based on the evidence of record regarding Plaintiffs' ongoing motor skills deficits related to her tenosynovitis in her right hand/wrist.

The problem with the RFC is its finding that Plaintiff can "*frequently* reach, handle, finger, and feel bilaterally."[8] AR: 25 (emphasis added). It is not clear what the ALJ relies on to conclude Plaintiff's conditions allow her to perform these tasks "frequently." This is particularly true considering the 2016 failure of conservative measures for her right De Quervain's tenosynovitis and the 2021 total score of "severe discrepancy" on her QNST 3. AR: 356, 779. Considering these latter findings, it is unclear whether the RFC's limitation of "frequently reach[ing], handl[ing],

---

[8] "Frequent" means occurring from one-third to two-thirds of the time. SSR 83-10, 1983 WL 31251, *6.

13

finger[ing], and feel[ing] bilaterally" is consistent with these findings and supported by substantial evidence in the record.

The ALJ offers no support, medical or otherwise, for finding the Plaintiff could "frequently" reach, handle, finger, and feel bilaterally. He cites no medical or other record to indicate from where he derived this finding. He cites no medical opinion or medical findings indicating Plaintiff's right hand/wrist tenosynovitis and related motor movement deficits allow her to perform these functional tasks on a "frequent," as compared to a more moderate, basis. It is unclear to the Court what evidence supports this finding, or whether the ALJ considered the evidence (discussed above) which suggests Plaintiff's right hand/wrist tenosynovitis and related motor deficits persisted culminating in a total score of "severe discrepancy" on her 2021 QNST 3. AR: 356, 779. *See Maria G. M. v. Kijakazi*, No. ED CV 21-1176-E, 2022 WL 17218646, at *10 (C.D. Cal. May 13, 2022) ("[S]ubstantial evidence does not support the ALJ's finding that Plaintiff would be capable of frequent handling/fingering."); *Jennifer L. K. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00234-GCS, 2020 WL 5645307, at *3–4 (S.D. Ill. Sept. 22, 2020) ("As Plaintiff argues, there was not substantial evidence to support the ALJ's conclusion that she was capable of frequent handling and fingering."); *Armstrong v. Colvin*, No. CV 12-7060-CW, 2013 WL 3381352, at *4 n.2 (C.D. Cal. July 8, 2013) ("Stenosing tenosynovitis, or trigger finger, may be a temporary or a chronic problem, and symptoms can vary in degree, from mild to severe. . . . The Court has reviewed the record, and it appears that substantial evidence does not support the

ALJ's determination that Plaintiff is capable of frequent handling and fingering despite her symptoms of trigger finger. [T]he record is unclear as to whether Plaintiff's condition is temporary or permanent, and, if it is permanent, the extent to which the condition affects Plaintiff's ability to use her hands."). On remand, the ALJ should develop the record in this regard.

It is true the Tenth Circuit has repeatedly held that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012); *see also Terwilliger v. Comm'r, Soc. Sec. Admin.*, 801 F. App'x 614, 628 (10th Cir. 2020) (same); *Berumen v. Colvin*, 640 F. App'x 763, 766 (10th Cir. 2016) (same); *McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012) (same). But while an RFC finding need not be supported by medical *opinion*, it must be supported by medical *evidence*. *Masse v. Astrue*, No. 09-cv-02079-REB, 2010 WL 3853318, at *5 (D. Colo. Sept. 28, 2010) ("Assuming *arguendo* that the ALJ properly rejected the various postural and environmental limitations suggested by the treating source opinions, his conclusion regarding plaintiff's residual functional capacity nevertheless must be based on the medical evidence."); *Talamantes v. Astrue*, No. 07-cv-01664-CMA, 2009 WL 306734, at *10 (D. Colo. Feb. 6, 2009) ("Rather, the Court reads the cases to hold that the ALJ's determination of Plaintiff's RFC must be supported by medical evidence[.]"), *aff'd sub nom.* 370 F. App'x 955 (10th Cir. 2010); *see also Mayberry v. Saul*, No. 6:20-cv-06014, 2020 WL 6390945, at *2 (W.D. Ark. Oct.

15

30, 2020) ("[A]n ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."). This is an important point because "the Court examines the record as a whole, including whatever evidence in the record fairly detracts from its weight, without resolv[ing] conflicts in evidence or decid[ing] questions of credibility to determine whether an ALJ's decision is supported by substantial evidence." *Borzymowski v. Comm'r of Soc. Sec.*, No. 3:22-CV-00902-DAC, 2023 WL 2477565, at *14 (N.D. Ohio Mar. 13, 2023) (cleaned up).

Because the ALJ is unclear in explaining or citing the record evidence in support of the frequency limitation bearing on Plaintiff's ability to reach, handle, finger, and feel bilaterally, the Court cannot conclude that substantial evidence in the record supports that finding. *Cf. Alexander v. Barnhart*, 88 F. App'x 302, 305–06 (10th Cir. 2004) ("We cannot say that substantial evidence supports the ALJ's determination that [plaintiff] could do medium work. . . . The record is not clear as to whether [plaintiff] can perform medium work, and, thus, it appears that the record must be further developed as to this issue.").

\*   \*   \*

For the reasons shared above, the Court finds the ALJ's RFC findings, and therefore, the Final Decision, is not supported by substantial evidence in the record. It is therefore, ORDERED that the judgment of the Commissioner is reversed and

16

remanded[9] pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion & Order.

DATED: June 25, 2025

BY THE COURT:

S. Kato Crews
United States District Judge

---

[9] The Court finds a remand for additional fact-finding, rather than an award of benefits, would serve a useful purpose considering the nature of the error at issue and because an award of benefits is not manifest from the administrative record. *See, e.g., Sallee v. Berryhill*, No. 17-cv-02397-KLM, 2019 WL 1198818, at *4 (D. Colo. Mar. 13, 2019); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).